## KING *against* THE HARTFORD INSURANCE COMPANY.

In order to constitute that extreme danger of utter destruction, in the case of a stranded vessel, which will entitle the insured to abandon, such danger must exist notwithstanding all the means within the power of the crew to use, and all the assistance within the power of the master to obtain, to save her.

Where a vessel was thrown upon dangerous rocks and considerably injured, in consequence of which all her cargo on board was lost, but she was shortly afterwards got off, and repaired at an expense much less

A NEW trial having been granted in this case pursuant to the advice of the nine Judges, (*ante,* 333. 341.) the cause came on for trial at *Hartford, September* term 1815, before *Edmond, Smith* and *Goddard,* Js.

The defendants suffered a default, and moved to be heard in damages. They admitted that the plaintiff was entitled to recover as for a partial loss, and that damages ought to be assessed for the amount of the actual damage which the ship sustained by means of the perils insured against, and no more. The plaintiff claimed, that having made an abandonment of the ship to the defendants, he was entitled to recover as for a total loss.

It appeared, that the ship, on the 1st of *July* 1812, while proceeding from *New-York* to *Middletown,* in attempting to pass through *Hurl-gate* near *New-York,* was stranded by running stern foremost upon a ledge of rocks among the rocks in that place called the *Hog's-back.* She immediately bilged between the main and mizen chains, discharged her cargo of salt, and filled with water to her lower deck. In that situation she remained until the 4th of *July,* when the plaintiff being informed thereof abandoned her to the defendants. The defendants refused to accept of the abandonment; and also refused to furnish any funds to get the ship off the rocks, or to do any thing about her. The plaintiff wrote to the master of the ship informing him that he had abandoned her to the defendants, who had declined doing any thing about her; and instructing him that it was his duty, notwithstanding, to remain by the wreck, and do every thing in his power for the preservation of the property. This he did, without any further directions. He employed several persons not of the

than half her value so as to be able to perform her voyage; it was held that the insured on the vessel could not abandon on the ground that the voyage was defeated.

*Hartford,*
November,
1815.

King
*v.*
Hartford
Insurance
Company.

crew of the ship to assist in getting her off the rocks, which was effected on the 8th of *July,* without her having sustained any material injury other than what she sustained at the time of her first going upon the rocks. The expense incurred by the master in getting her off was 965 dollars and 6 cents, for which, by the laws of the state of *New-York* where the accident happened, the persons employed in getting her off had a lien upon her, and for which also the master was personally liable.

At the time of the abandonment, the ship, by reason of the perils insured against, was in a situation of extreme hazard of ultimate loss, without other assistance than such as could be furnished her by any exertions of the master and crew ; and without incurring the expense aforesaid, and without adopting the means for which that expense was incurred, there was very little chance of her being saved or extricated from that condition. There was also danger of her being disengaged from the rocks, and sinking, before those means could be applied ; and that danger would have been encreased, and become great, if a severe storm had in the mean time arisen. But no storm did arise until the means were successfully applied. At the time of the abandonment, many good judges were of opinion that she could not, by the use of any means, be got off in safety ; while others, of the same character, were of a different opinion. She lay in such a situation that the contact of her bottom with the rocks could not be discerned ; but the chances were in favour of the success which did attend the experiment.

The plaintiff, acting under the belief of such probable success from intelligence received, wrote a letter to the *Middletown Insurance Company,* who had made insurance upon the same ship, for the same voyage, stating that the *Hartford* office had authorized him to get the ship into *Connecticut* river as soon as possible ; and to do whatever should be needful, without militating against the abandonment, and enquiring whether the *Middletown* office had any objection to this measure ;(*a*) but the proposition therein contained was not acceded to by that office, and for that reason nothing was done under the agreement therein stated to have been made with the defendants.

(*a*) See the letter transcribed at length in the former report of this case, *ante,* p. 335.

*Hartford,*
November,
1815.

King
*v.*
Hartford
Insurance
Company.

The ship, when got off the rocks, was capable of being repaired at much less expense than half her value.

After she was got off, she was taken to *New-York* by the master, who there applied to Messrs. *E.* & *H. Averill*, merchants in *New-York,* who had usually done the plaintiff's business in that city, for advice ; and was by them referred to the wardens of the port of *New-York.* The master acting under the advice of those wardens, advertised the ship, her tackle and apparel in a daily paper in *New-York* for sale to the highest bidder ; of which the defendants had information expressly communicated to them by the plaintiff. The port-wardens of *New-York* had no authority by the laws of that state to advise, order or direct the sale of the ship ; and the master had no other power or authority than every master of a ship by law possesses under like circumstances. But if such authority in the master does exist to make the sale ; for all the purposes of selling the ship to the best advantage, and for the highest price, the sale was conducted perfectly fairly. The purchase of the ship, her tackle and apparel, was made by *John King* of *Hartford,* through the agency of others, without any authority from the plaintiff ; but nothing was paid by either of them to the auctioneer, or the master of the ship. On the return of *John King* from *New-York,* he informed the plaintiff of the purchase, presuming that he would take her on his own account. The plaintiff accordingly took possession of the ship, caused all the bills against her for getting her off the rocks to be paid, repaired her, and brought her round into *Connecticut* river, where she remained in his possession until after the termination of the late war with *Great-Britain,* when he sent her to sea under the register which she had previous to the loss.

The ship, her tackle and apparel sold for the sum of 2794 dollars, 58 cents ; which sum the plaintiff, after deducting the sums expended in getting off the wreck, including seamen's wages, offered the defendants to discount with them in part payment of the amount of the loss ; but they declined the offer.

Upon these facts the court reserved the question whether the plaintiff was entitled to recover as for a total loss, or as for a partial loss only, for the consideration and advice of the nine Judges.

*Hartford,*
November,
1815.

King
*v.*
Hartford
Insurance
Company.

*Terry* and *J. Trumbull,* for the plaintiff, contended that the plaintiff was entitled to recover as for a total loss, 1. Because the voyage was defeated. *Abbott* v. *Broome,* 1 *Caines' Rep.* 302. *Alexander* v. *Baltimore Insurance Company,* 4 *Cranch* 377. *King* v. *The Middletown Insurance Company,* ante, 202. *Marsh. Insur.* 585. (*Condy's* edit.)

2. Because the ship, at the time of the abandonment, was in extreme danger of being utterly destroyed. *King* v. *The Middletown Insurance Company,* ante, 184. 201. *Wood* v. *The Lincoln and Kennebeck Insurance Company,* 6 *Mass. Rep.* 483.

3. The right of abandonment being established, the plaintiff has done nothing to waive that right.

*Edwards* and *T. S. Williams,* contra.

SWIFT, Ch. J. The question is, whether the plaintiff is entitled to recover for a total or partial loss. He claims to recover for a total loss; and this depends on the validity of the abandonment.

In the case of *King* v. *The Middletown Insurance Company,* it was decided, that if the injury of the vessel be such only as to delay the voyage, and there was no extreme hazard of her loss, even if she were stranded, but under such circumstances that she might be got off without danger of sinking, or going to pieces; this would not be a total loss, at any time; but if the situation of the vessel is extremely hazardous, and she is in danger of being utterly lost, this would be a total loss, and the insured might abandon, unless the insurers would consent to bear the expense of getting her off and of repairing her. It is now a question of fact upon the case and evidence stated, whether the situation of this vessel was extremely hazardous so as to warrant an abandonment.

To constitute extreme hazard, the situation of the vessel must be such that there is imminent danger of her being lost, notwithstanding all the means that can be applied to get her off; all the means within the power of the crew to use, and all the assistance within the power of the master to obtain. A vessel may be in a situation where her loss would be inevitable, without the application of means to save her, and yet

*Hartford,*
November,
1815.

King
*v.*
Hartford
Insurance
Company.

by the application of such means there would be no difficulty in preventing a loss. This certainly would not be called extreme hazard; for on this principle there could be few instances where vessels are stranded, in which the insured could not abandon, unless the insurers would agree to be at the expense of getting them off. This would be introducing a novel principle into the law of insurance. Extreme hazard, then, can only exist where the situation of the vessel is such that there is little prospect or chance of saving her with all the means and assistance that can be obtained; for then, as the insured can recover nothing for his expense if the vessel is lost, it would seem unreasonable to require him to incur expense for the probable benefit of the underwriters only. But if there is a reasonable prospect that the vessel can be extricated from her dangerous situation, by the exertion of means at command, then the insured is bound to use them, and wait the event.

The question then is, on the facts stated, whether this vessel was in extreme hazard of being lost, notwithstanding any means within the power of the master or insured to make use of, to extricate her. It appears that the vessel had remained on the rocks four days at the time of the abandonment without increase of danger; that the chances were in favour of getting her off, though good judges differed as to the success of the experiment. Under these circumstances, it cannot be pretended, that this vessel was in extreme hazard of being lost. There was such reasonable prospect that she might be extricated from her situation by the use of means within the power of the master to command, that he was bound to make the experiment. Until the issue of that experiment was known there could be no right to abandon; for it would be a solecism to say, that when the situation of a vessel that is stranded is such that the insured are bound to use all the means in their power to extricate her, they can have a right at the same time to abandon her to the insurers unless they will agree to be at the expense. This would be adopting the principle that a vessel when stranded may be abandoned unless the underwriters will agree to be at the expense of getting her off. But it is a most unquestionable rule in the law of insurance, " that mere stranding of itself can never be deemed a total loss so as to enable the insured

*Hartford,*
November,
1815.

King
*v.*
Hartford
Insurance
Company.

immediately to abandon.  If by some fortunate accident, by the exertions of the crew, or by any borrowed assistance, the ship can be got off and rendered capable of continuing her voyage, it is not a total loss, and the insurers are liable only for the expenses occasioned by the stranding.  It is only where the stranding is followed by *Shipwreck*, or where the ship in any other way is rendered incapable of prosecuting her voyage, that the insured is entitled to abandon." *Marsh. Insur.* 582. *c.* 583. (*Condy's* edit.)  The vessel in question was got off the rocks by the exertions of the crew and borrowed assistance, and rendered capable of prosecuting her voyage at an expense much less than half her value ; of course, there never was that actual or technical total loss that would warrant an abandonment ; and the plaintiff is entitled to recover for a partial loss only.

But it is insisted, that the voyage was defeated, and was not worth pursuing ; for which the plaintiff had a right to abandon.  But it appears, that part of the cargo had been saved ; that the vessel had been repaired, and rendered capable of pursuing her voyage, at an expense much short of half her value ; and had arrived at *New-York*, within a few days sail of her port of destination.  From these facts it does not appear that the voyage was not worth pursuing.

Admitting, however, that such was the loss that the voyage, as it respected the cargo, was defeated ; this can make no difference, for the policy was on the vessel only.  The engagement in such policy is, that the vessel shall be of sufficient ability to perform the voyage, not that she shall actually perform it ; for this may depend on the will of the insured.  There may be such a loss of the cargo by the perils insured against as to render the voyage not worth pursuing, while the vessel sustains no material injury.  To say, under such circumstances, it is optional with the insured to give up the voyage, abandon the vessel, and call on the insurers for a total loss, would be to subject them for a loss where no injury had arisen from the perils insured against, and where there had been no violation of the contract ; it would subject the underwriters on the vessel for damage done to the cargo ; they would be obliged to pay for the vessel when in a state of safety, capable of prosecuting her voyage, uninjured by the perils contemplated in the

King
*v.*
Hartford
Insurance
Company.

policy. No case can be found to warrant such a doctrine as this.

In this opinion SMITH, BRAINARD, BALDWIN and GODDARD, Js. concurred.

TRUMBULL and HOSMER, Js. dissented.

Judgment to be entered
for a partial loss only.